# EXHIBIT A

HERBERT W. LOUTHIAN, JR.



**Louthian**
law firm, p.a.

October 3, 2018

**Via Certified Mail (Article Number 7011 3500 0000 2063 1339)**

National Registered Agents, Inc.
2 Office Park Ct., Ste. 103
Columbia, South Carolina 29223

   Re: Rianne R. Fisher v. Bridgestone Retail Operations, LLC
      C/A No.: 2018-CP-40-05177

To Whom It May Concern:

   Enclosed and hereby served upon you is the Summons and Complaint in the above referenced civil action.

                Cordially,

                Herbert W. Louthian, Jr.

LJ/bcs

Enclosures

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
                               )    FIFTH JUDICIAL CIRCUIT

COUNTY OF RICHLAND )
                               )    Civil Action No. 2018-CP-40-_____

                               )

Rianne R. Fisher, )

            Plaintiff, )

vs. )                    SUMMONS

Bridgestone Retail )
Operations, LLC, )

           Defendant. )
_____ )

TO:    THE DEFENDANT ABOVE NAMED:

        YOU ARE HEREBY SUMMONED and required to answer the Complaint in the above

entitled proceeding, a copy of which is herewith served upon you, and to serve a copy of your

Answer to said Complaint on the subscriber at his offices at Suite 300, The Marlboro Building,

1116 Blanding Street, Columbia, South Carolina, within thirty (30) days after the service hereof,

exclusive of the day of such service; and if you fail to answer the said Complaint within the time

aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in said

Complaint; and a default judgment may be rendered against you.

                               LOUTHIAN LAW FIRM, P.A.

                               BY: s/ Herbert W. Louthian, Jr.
                               Herbert W. Louthian, Jr.
                               1116 Blanding Street, 3rd Floor
                               Post Office Box 1299
                               Columbia, South Carolina 29202
                               (803) 454-1200
                               S.C. Bar No: 3411

Columbia, South Carolina
October 3, 2018

1

STATE OF SOUTH CAROLINA   )   IN THE COURT OF COMMON PLEAS
                           )   FIFTH JUDICIAL CIRCUIT

COUNTY OF RICHLAND       )
                           )   Civil Action No. 2018-CP-40-_____

Rianne R. Fisher,          )

        Plaintiff,       )

vs.                         )           COMPLAINT
                         )    (JURY TRIAL REQUESTED)

Bridgestone Retail        )
Operations, LLC,         )

         Defendant.     )

Plaintiff, complaining of the Defendant, would show unto this Court as follows:

## JURISDICTION AND VENUE

1.     This action arises out of the Defendant's deprivation of Plaintiff's rights under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), et

seq., and the statutory and common law of the state of South Carolina.

2.     The Circuit Court has jurisdiction over this matter pursuant to Article V, §11 of

the South Carolina Constitution.

3.     Venue is proper in Richland County pursuant to South Carolina Code §15-7-30

because the most substantial part of the allegations raised in this Complaint

occurred in Richland County.

4.     The Plaintiff is a resident and citizen of the state of South Carolina. The matters

complained of in this complaint occurred in Richland County, South Carolina

while the Plaintiff was employed at Bridgestone Retail Operations, LLC, doing

business as Firestone Complete Auto Care at 9728 Two Notch Road in Columbia.

2

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

5.   Bridgestone Retail Operations, LLC is a corporation doing business within Richland County, South Carolina. The defendant company is a legal entity that may sue and is subject to suit in its own name. The defendant company has continuously and does now employ more than 15 persons and is engaged in an activity affecting commerce. The defendant company is an employer within the meaning of §701B of Title VII, 42 U.S.C. 2000 (e)(b).

## PROCEDURE

6.   The Plaintiff filed timely charges of sexual harassment and constructive discharge with the Equal Employment Opportunity Commission and the South Carolina Human Affairs Commission. She has received her Notices of Right to Sue and this action is timely.

## STATEMENT OF CLAIM

7.   Plaintiff was employed by the defendant Bridgestone Retail Operations, LLC (Bridgestone) beginning on July 5, 2017. Beginning shortly after Plaintiff was employed by Bridgestone, Jerome Scott (Scott) began to sexually harass the plaintiff on the job.

8.   The Bridgestone "Workplace Violence Policy" states that employees have a duty to report "Prohibited Behavior" including "sexual harassment". The policy states that "[r]eports may be made *to their manager*, the Corporate Security Department, the Human Resources Department or the Law Department." (emphasis supplied).

9.   The policy goes on to state that "[t]he Company takes seriously all reports of violence or threats of violence and will ensure that Corporate Security, in collaboration with Human Resources and Legal Departments, conducts a thorough and proper investigation."

3

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

10.    The policy further states that employees "who violate this policy shall be subject to discipline up to and including termination of employment" and "individuals who participate in a violent act or threat may be banned from Company premises and may be subject to civil liability and/or criminal prosecution."

11.    On July 19, 2017, Scott said to the plaintiff during their shift at Bridgestone, "I'm either going to make you quit, or I'm going to fuck you." The same day Scott made this comment, Plaintiff phoned her store manager, Rick Lewis (Lewis), and reported Scott's comment to Lewis. The next day Lewis spoke with the Plaintiff in person and made light of Scott's inappropriate comments. Lewis told the Plaintiff, "He [Scott] probably didn't mean it. Let me know if it happens again." Neither Lewis nor Bridgestone took any corrective action against Scott.

12.    On August 5, 2017, Plaintiff was not scheduled to work, but she went to the Bridgestone store to watch a mandatory training video. While she was at the store, Scott, who was working his shift that day, said to Plaintiff, within earshot of other employees, "You have a great set of tits. I'd like to bury my face in them." Scott made this comment after walking in on the Plaintiff in the restroom. Lewis heard Scott's comment, but only shook his head and told Plaintiff "He didn't really mean it like that. Boys will be boys." Again, neither Lewis nor Bridgestone took any corrective action against Scott.

13.    The next day, Plaintiff and Scott were assigned to work the same shift. Scott said to Plaintiff "you've got a fat fucking ass." Later the same day, Scott displayed a pistol to the Plaintiff and told her that he carried the pistol to protect himself. Plaintiff called Lewis and reported that Scott had a gun at work and told Lewis about Scott's comments. Lewis informed Plaintiff that he would speak with Scott

4

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

about the gun and about his behavior. Upon information and belief, Lewis again took no action against Scott.

14.    On September 1, 2017, Plaintiff was working a shift with Scott. Scott approached Plaintiff and said "Just let me stick my tongue in you, you know you'd like it." Plaintiff reported the incident to Lewis the same day. Lewis responded and said "Yeah, that is pretty inappropriate, but you've just got to ignore him sometimes. He's German and they're just like that."

15.    On September 13, 2017, Plaintiff and Scott were again assigned to work the same shift. Scott said to Plaintiff, "Just wait until we're alone. I'll make it worth your while." Again, Plaintiff reported Scott to Lewis. She specifically told Lewis that she was not comfortable working with Scott based on his past conduct towards her. Lewis said he would do his best to change the schedule so the two would not work the same shift in the future. Lewis told Plaintiff she should would occasionally have to deal with Scott's conduct.

16.    On October 2, 2017, Plaintiff was at work but Scott was not working that day. While Plaintiff was at work, Scott sent pornographic material to Plaintiff's phone. Plaintiff immediately deleted the offensive material, but she reported the incident to Lewis and described what Scott sent her and told Lewis she was not comfortable receiving pornography on her phone. Lewis again took no action and again made light of Scott's behavior. Lewis told Plaintiff maybe Scott's phone had been hacked. The next day at work, Scott asked Plaintiff if she had received the video he sent the day before. This was a clear reference to the pornography Scott sent Plaintiff.

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

17.   On October 13, 2017, both Scott and Plaintiff were again working the same shift
      at Bridgestone. Scott approached Plaintiff and asked her "Why don't you ever text
      me back?" Scott continued: "I know you're married but it doesn't matter. You
      know I'd be all the fun you need." Plaintiff immediately went to Lewis and
      reported Scott. She told Lewis she was tired of Scott's inappropriate behavior and
      Scott was bringing her husband into his harassment. Lewis attempted to appease
      Plaintiff and told her she was a hard worker and a fast learner and that she would
      soon have Scott's job. Apart from Lewis's hollow assurances, again neither he nor
      Bridgestone took any action against Scott.

18.   On October 29, 2017, after an incident at work involving a customer's vehicle,
      Scott stated to Plaintiff, "Quit your limping and stop freaking out. You're acting
      like such a cunt right now. Stop being a bitch, it's not so bad." Again, Plaintiff
      reported Scott's conduct to Lewis and again Lewis defended Scott. Lewis told
      Plaintiff that she had overreacted and that she should "just keep her head down
      and he [Scott] will eventually stop."

19.   On November 5, 2017, both Plaintiff and Scott were working the same shift at
      Bridgestone. Scott brought several beers with him to work that day and drank beer
      throughout his shift. In the presence of co-workers, Scott said to Plaintiff,
      referring to her, "Oh yeah girl, I'd tap that." Plaintiff called Lewis to report
      Scott's drinking on the job as well his continued harassment. Lewis did not
      answer his phone. The next day, Plaintiff reported Scott's drinking on the job and
      his inappropriate comments to Lewis. Lewis replied, "Well, in Germany you have
      beer breaks midday so maybe that's a cultural thing for him. I know it's wrong,

6

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

but just be patient, there's a plan in place for you to take his job, so things will change if you just keep working hard." Again, Scott was not disciplined.

20.    On November 14, 2017, while the two were working the same shift, Scott displayed a gun to Plaintiff and told her if any of Scott's girlfriend's family showed up at Bridgestone, he had something to "blow them the fuck away." Scott then told Plaintiff, "since you don't have anything better to do, why don't you go receive and put up my truck?" In other words, Scott displayed a gun to Plaintiff and then told her to do his job. Plaintiff reported the gun to Lewis and asked Lewis if she was expected to do Scott's job. Lewis, in typical fashion, downplayed Scott's actions and told Plaintiff she did not have to do Scott's job, but if she did, she would get promoted faster.

21.    On November 29, 2017, Scott and Plaintiff were working the same shift at Bridgestone when Scott said to Plaintiff, "I bet your husband doesn't have a dick like mine. You should be fucking me instead." By this time, Plaintiff was near her breaking point, having been subjected to Scott's incessant harassment since she started working at Bridgestone, while Bridgestone took no action to address Scott's conduct. She told Scott, "go fuck off and leave my husband's name out of your mouth." Lewis was not at work on the 29th, but the next day Plaintiff called Lewis on her day off and reported Scott's actions the day before. Lewis again took no action against Scott. As he had done virtually every time Plaintiff reported Scott's wholly inappropriate conduct, Lewis replied that Bridgestone was making plans to give Plaintiff Scott's job as soon as she was ready to take over the responsibilities of the job.

7

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

22.     On December 5, 2017, Scott told Plaintiff that he was going to look up an adult film star who had recently died. Scott went on the internet using his cell phone and found a video clip of the dead porn star. Scott played the video inside the showroom; the volume was loud enough that Plaintiff and others could hear the audio. Plaintiff reported the incident to Lewis who responded, "next time just tell him to turn it down." Lewis took no action against Scott.

23.     On December 30, 2017, Scott and Plaintiff were working the same shift when Scott remarked to Plaintiff, "So is your husband going to be your New Year's kiss? If not, I'll jam my tongue down your throat. Or maybe Robby could. Or maybe you could just fuck the shit out of one of the technicians." Plaintiff reported Scott's behavior to Lewis, who replied, "just give it another month or less, we're figuring out the best way to get rid of him."

24.     On January 4, 2018, Scott and the Plaintiff were working the same shift. As the Plaintiff was about to leave for her lunch break, Scott asked her to get him some beer while she was on her lunch break. The Plaintiff told him "no". Later the same day, Scott went on his lunch break. When he returned, he had a Mountain Dew can filled with beer. Scott was bragging about having beer at work and told the Plaintiff to smell it. The Plaintiff immediately pulled Lewis aside and told him he should check Scott's Mountain Dew can. Lewis got the can, smelled it and poured the beer into the garbage can. Lewis took Scott inside his office for about ten minutes. After Lewis left for the day, Scott complained that one of the mechanics snitched on him. Scott then went to his car, got another beer and continued drinking on the job.

8

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

25.    On January 8, 2018, while working the same shift together, Scott said to Plaintiff,

"Why don't you just go and suck Terrell's dick since you like him so much?"

Plaintiff reported Scott's comment to Lewis and asked Lewis to tell Scott to stop

speaking to her that way. Lewis replied "I'll try, but we both know he's just got

no filter." Lewis took no action against Scott.

26.    On January 10, 2018, Plaintiff and Scott were again on the same shift, as was

Robby Herrington, the Service Manager. In Plaintiff's presence, Scott said to

Robby, "Your wife's a cunt". Scott then turned to Plaintiff and said "And I don't

know what you see in your husband. So I don't understand why you two don't

just fuck already." Plaintiff told Scott his comments were seriously inappropriate.

Robby told Plaintiff he was going to write Scott up for his comments.  Plaintiff

watched Robby do the write-up. Lewis returned to work two days later and

Plaintiff asked him if he had seen the write-up and if he'd signed off on it.  Lewis

responded that he had not witnessed the conduct and "it just didn't seem like a

bad enough offense to get a write-up for."

27.    Between January 20 and 28, 2018, Scott made the following comments to

Plaintiff while they were both working at Bridgestone: "I bet you're screwing

Terrell." "I bet you're in bed with Robby." "It wouldn't surprise me if you were

fucking Wally." "I bet you'd suck Alan's dick." "Wonder if you're nasty enough

to fuck Daniel." "I bet old guys like Jimmie just turn you on." On multiple

occasions during this time period, Scott made comments to the effect that "you

will fuck me one day." Plaintiff reported these comments to Lewis. Lewis spoke

to Scott but took no action to stop Scott's incessant harassment of the Plaintiff.

9

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

28.    By this time, Plaintiff could no longer tolerate Scott's endless perverse comments
       or his lewd behavior and veiled threats. She was forced to seek other employment.
       To that end, she arranged a job interview on January 29, 2018. After she went to
       the job interview, she reported to her job at Bridgestone. She was wearing a
       business suit when she arrived at work and she prepared to change into her
       mechanic's uniform. Scott saw her in the business suit and resorted to his typical
       behavior. Scott told Plaintiff "You clean up really fucking nice. I'd take you on a
       date and fuck the shit out of you." Plaintiff asked Scott to stop with the
       comments. Scott did not relent: he said "You should keep the clothes on, might be
       good for business to have a sexy woman run the counter or extra service if you
       know what I mean."

29.    Plaintiff tendered her notice to Bridgestone by emailing the district manager,
       Robert Rhodes. In her email, she informed Rhodes that she wanted time to talk
       with him. Plaintiff was hoping to remain a part-time employee of Bridgestone if
       she could be free from Scott's harassment and she wanted to discuss that
       possibility with Rhodes.

30.    On January 31, 2018, Rhodes visited the Bridgestone store where Plaintiff and
       Scott worked. Rhodes met with Plaintiff and inquired why she was leaving.
       Plaintiff spent the next thirty minutes recounting to Rhodes the numerous reports
       she had made to Lewis about Scott's outrageous comments and conduct. To
       Plaintiff's surprise, Rhodes appeared to be hearing of these issues for the first
       time. Rhodes assured Plaintiff he would address her concerns with Scott. Plaintiff
       implored Rhodes to be careful about how he approached Scott about his
       deplorable conduct. Plaintiff knew Scott carried a firearm at work and she was

                                        10

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

afraid Scott would attempt to retaliate against her while she worked her final two weeks at Bridgestone.

31.    On February 1, 2018, the Plaintiff was not working. On her day off, Scott called and texted Plaintiff's cell phone. She did not answer his calls but according to his text messages, Scott had learned that Plaintiff had made complaints against him.

32.    The next day, Plaintiff was at work when Rhodes informed her that Scott would not be written up or demoted, nor would his pay be cut, because the Defendant did not want Scott to "feel like he was being punished."

33.    Defendant discriminated against and harassed the Plaintiff, and thereby altered the terms and condition of her employment. Defendant caused the Plaintiff to suffer damages because of her sex, all in violation of the Title VII of the 1964 Civil Rights Act, as amended.

34.    As a direct and proximate result of the Defendant's conduct, the Plaintiff has suffered and continues to suffer severe emotional distress, psychological injury, mental suffering, and humiliation. Jerome Scott's actions and conduct, all of which were reported to Bridgestone management multiple times, persisted over a period of several months. The conduct was pervasive and ongoing and was reported to Plaintiff's supervisor who took no action to protect her or to prevent the continuing harassment.

### FOR A FIRST CAUSE OF ACTION
#### (Title VII of the Civil Rights Act of 1964)
#### Hostile Work Environment

35.    Plaintiff realleges the foregoing allegations of this complaint.

36.    Defendant's above described actions, individually and collectively, constitute discrimination against the Plaintiff on the basis of her sex, altered the terms and

11

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

conditions of her employment, created a hostile work environment and constitute

sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000(e) et seq.

37.     As a direct and proximate result of the acts or inaction of the Defendant, the

Defendant created and cultivated a hostile work environment. Plaintiff was

damaged in the particulars set forth herein and is entitled to an award of

compensatory and punitive damages plus attorneys fees, expert witness fees, and

costs as to this cause of action.

## FOR A SECOND CAUSE OF ACTION
### Constructive Discharge

38.     Plaintiff realleges the forgoing allegations of this complaint.

39.     Plaintiff reported the sexual harassment conduct of Scott to her superiors at

Bridgestone, but no steps were taken to protect her from the continuing sexual

harassment.

40.     Plaintiff's working conditions became so intolerable that she was forced to tender

her resignation on January 31, 2018.

41.     By failing to take any actions against Scott despite Plaintiff's timely reports of

Scott's conduct to her supervisor, Lewis, the Defendant deliberately created

working conditions and a working environment that were so hostile, no

reasonable person in Plaintiff's position would tolerate the conditions.

42.     Defendant's failure to act on Plaintiff's repeated reports of the hostile work

environment were an intentional effort to force the Plaintiff to resign from her job.

## DAMAGES AND RELIEF REQUESTED

43.     Plaintiff realleges the forgoing allegations of this complaint.

12

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

44.     Plaintiff has suffered physical pain and suffering, mental pain and anguish, anger and disappointment, shame, pecuniary loss, loss of enjoyment of life, and loss of employment opportunities.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(a) Judgment against the Defendant on the causes of action set forth above as a result of Defendant's violation of Title VII of the Civil Rights of 1964 including sexual harassment and constructive discharge:

    1) A declaratory judgment that the Defendant's acts, policies, and practices and procedures complained of herein violated Plaintiff's rights as secured under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), et seq.

    2) Back pay, front pay, reimbursement for lost benefits, and retroactive increases in accordance with proof, plus pre-judgment and post-judgment interest.

    3) A permanent injunction enjoining the Defendant and all of those acting in concert with Defendant, from engaging in any employment practice or policy which discriminates against the Plaintiff on the basis of sex.

    4) Actual and compensatory damages plus an award of punitive damages for the violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

    5) Attorney's fees, costs, and expert witness fees.

(b) For such other and further relief as this Court might deem just and proper, including but not limited to such other relief available to the Plaintiff as provided for by Title VII of the Civil Rights Act of 1964 and the laws of the State of South Carolina.

[Signature Blocks on the Following Page]

13

LOUTHIAN LAW FIRM, PA

ATTORNEYS FOR PLAINTIFF

BY: s/ Herbert W. Louthian, Jr.
Herbert W. Louthian, Jr.
1116 Blanding Street, 3rd Floor
Post Office Box 1299
Columbia, South Carolina 29202
(803) 454-1200
S.C. Bar No: 3411

David Scott
1116 Blanding Street, 3rd Floor
Post Office Box 1299
Columbia, South Carolina 29202
(803) 454-1200
S.C. Bar No: 68667

Columbia, South Carolina
October 3, 2018

ELECTRONICALLY FILED - 2018 Oct 03 9:18 AM - RICHLAND - COMMON PLEAS - CASE#2018CP4005177

14